UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VICTOR M. RODRIGUEZ, | : | Case No. 3:11-cv-359 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| TROPICAL SMOOTHIE FRANCHISE | : | |
| DEVELOPMENT CORP., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER THAT: (1) DEFENDANTS' MOTION TO DISMISS (Doc. 5) IS
GRANTED; (2) FURTHER PROCEEDINGS IN THIS MATTER ARE STAYED;
AND (3) THIS CASE IS CLOSED**

This civil action is currently before the Court on Defendants'[1] motion to dismiss

(Doc. 5) and the parties' responsive memoranda (Docs. 8, 17, 18, 19).

## I.    FACTUAL BACKGROUND

This dispute arises from Plaintiff's purchase of a Tropical Smoothie franchise in

2006.  Plaintiff alleges that he incurred losses in excess of $250,000 as a result of the

purchase.  Specifically, Plaintiff maintains that Defendants violated disclosure obligations

of Ohio law in connection with the purchase, and that such violations entitle him to the

relief requested in his Complaint.  Defendants have now moved the Court to dismiss or

stay this proceeding and compel arbitration pursuant to Paragraph 25.D of the Franchise

Agreement and on provisions of the Federal Arbitration Act.  Plaintiff argues that the

arbitration clause is unconscionable and therefore should not be enforced.

---

[1] Defendants include Eric Jenrich and Tropical Smoothie Franchise Development
Corporation.

Tropical Smoothie is a national franchisor of retail outlets offering for sale premium fruit smoothies, sandwiches, gourmet wraps, and coffee drinks, among other items, under the TROPICAL SMOOTHIE® and TROPICAL CAFÉ® marks.  Mr. Jenrich is the president and Chief Executive Officer of Tropical Smoothie.  (Doc. 2, Ex. A).  On March 3, 2006, Plaintiff entered into the Franchise Agreement with Tropical Smoothie, by which Tropical Smoothie granted Plaintiff a franchise to operate a Tropical Smoothie® franchise in Springboro, Ohio, subject to certain terms and conditions.  (*Id.* at ¶1(C)).  In entering into the Franchise Agreement, Plaintiff and Tropical Smoothie explicitly agreed that they would submit all disputes related to the Franchise Agreement to binding arbitration, as follows:

> All disputes or claims relating to this Agreement (including our right to terminate this Agreement upon a claim of breach) ("Dispute") shall be submitted to nonbinding mediation conducted in Atlanta, Georgia, and if not settled through mediation shall be submitted to binding arbitration before the American Arbitration Association ("AAA") in Atlanta, Georgia.

(*Id.* at ¶25(D)).

## II.     ANALYSIS

### A.     The Federal Arbitration Act

Under the Federal Arbitration Act (the "FAA"), a written agreement to arbitrate disputes which arise out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.

2000), citing 9 U.S.C. § 2.  The FAA was designed to override judicial reluctance to

enforce arbitration agreements, to relieve court congestion, and to provide parties with a

speedier and less costly alternative to litigation.[2]  *Id.*

When asked by a party to compel arbitration under a contract, a federal court must

determine whether the parties agreed to arbitrate the dispute at issue.  *Id.*  Courts are to

examine the language of the contract in light of the strong federal policy in favor of

arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24

(1983) (the FAA "is a congressional declaration of a liberal federal policy favoring

arbitration agreements, notwithstanding any state substantive or procedural policies to the

contrary").  Any ambiguities in the contract or doubts as to the parties' intentions should

be resolved in favor of arbitration.  *Stout,* 228 F.3d at 714.  The "primary purpose" of the

FAA is to ensure "that private agreements to arbitrate are enforced according to their

terms."  *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.,* 489 U.S. 468,

479 (1989).  *See also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24 (the FAA expresses

Congress' intent "to mandate enforcement of all covered arbitration agreements").

Section 3 of the FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such
> suit is pending, upon being satisfied that the issue involved in

---

[2]  The arbitration agreement at issue in this case clearly falls within the scope of the FAA
which applies whenever there is an agreement to arbitrate contained in "a contract evidencing a
transaction involving commerce."  9 U.S.C. § 2.

> such suit or proceeding is referable to arbitration under such
> agreement, shall on application of one of the parties, stay the trial
> of the action until such arbitration has been had in accordance
> with the terms of the Agreement, provided the applicant for the
> stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Section 3 thus "requires" a court in which suit has been brought "'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400 (1967).[3]

When considering a motion to stay proceedings and compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable;[4] and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.  *Stout*, 288 F.3d at 714.

The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions."  *Allied Steel and Conveyers, Inc. v. Ford Motor Co.*, 277 F.2d

---

[3]  *See also Santos v. Am. Broad. Co.,* 866 F.2d 892, 894 (6th Cir. 1989) ("[w]here the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration").

[4]  Plaintiff has not asserted any federal statutory claims.

-4-

907, 913 (6th Cir. 1960).  It is settled authority that doubt regarding the applicability of an

arbitration clause should be resolved in favor of arbitration.  *Id.*  If parties contract to

resolve their disputes in arbitration rather than in the courts, a party may not renege on

that contract absent the most extreme circumstances.  *Id.*  Furthermore, a district court's

duty to enforce an arbitration agreement under the FAA is not diminished when a party

bound by the agreement raises claims arising from statutory rights.  *Id.*[5]

> **B.    Unconsionability**

Plaintiff alleges that this Court should not enforce the arbitration agreement

because the provision is unconscionable.  Under Florida law, a court may decline to

enforce a contract on the ground that it is unconscionable.[6]  *Powertel, Inc. v. Bexley*, 743

So. 2d 1039, 1040 (Fla. 2d DCA 1990).  To void an agreement to arbitrate on such

grounds under Florida law, a court must find that the agreement is *both* procedurally and

substantively unconscionable.  *Orkin Extermination Co., Inc. v. Petch*, 872 So. 2d 259,

---

[5]  This Court routinely enforces arbitration provisions and compels arbitration.  *See Crown Equip. Corp. v. Fla. Lift Sys.,* No. 3:04-CV-007, 2005 U.S. Dist. LEXIS 23112, at *2-3 (S.D. Ohio Sept. 26, 2005) (Rice, J.) (holding that parties must arbitrate the breach of contract dispute arising out of an agreement containing a valid arbitration provision); *Robert Lamb Hart Planners & Architects v. Evergreen, Ltd.,* 787 F. Supp. 753, 757 (S.D. Ohio 1992) (Spiegel, J.) (granting motion to compel arbitration provision where the firm's contract with the defendant corporation for a construction project contained a valid arbitration clause); *Eagle-Picher Indus. Inc., v. Asbestos Claims Facility, Inc.,* No. C-1-88196, 1988 U.S. Dist. LEXIS 11208 at *5 (S.D. Ohio June 23, 1988) (Rubin J.) (upholding a stay of proceedings request in a breach of contract case between a company and its insurers pending the outcome of arbitration pursuant to a signed agreement between the parties).

[6]  The parties agree that Florida law applies for purposes of determining whether the arbitration clause should be invalidated for unconscionability.

265 (Fla. 2d DCA 2004) (emphasis added). Plaintiff carries the burden of establishing that the arbitration provision at issue is "both procedurally and substantively unconscionable." *Sanders v. Comcast Cable Holdings, LLC*, No. 3:07cv918, 2008 U.S. Dist. LEXIS 2632, at *6 (N.D. Fla. Jan. 14, 2008).

### 1. *Procedural Unconscionability*

Procedural unconscionability "[c]oncerns the manner in which the contract was entered. It involves consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms. For example, a court could find a contract procedurally unconscionable if important terms were 'hidden in a maze of fine print.'" *Orkin Extermination*, 872 So. 2d at 265.

The focus of Plaintiff's claim on procedural unconscionability is that he opted not to retain an attorney to review the Franchise Agreement before he signed it. Plaintiff claims that "he did not know the Franchise Agreement contained an arbitration agreement, and would not have understood the terms or consequences of agreeing to the arbitration provision even if he had read it." (Doc. 8 at 6). However, "[i]n Florida, a party to a contract is not 'permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it or because in retrospect, the bargain turns out to be disadvantageous." *Murphy v. Courtesy Ford*, 944 So. 2d 1131, 1334 (Fla. 3d DCA 2006) (refusing to consider plaintiff's argument that an arbitration provision was procedurally

unconscionable in light of the fact that plaintiff failed to read the contract).[7]

Plaintiff alleges that "at a time when Americans are constantly bombarded with lengthy agreements on such subjects as software licenses, credit cards, internet and cellphone services . . . many of which do not generally get read – such a rule [failure to read the agreement defeats any claim of procedural unconscionability] would be an open invitation to companies to add outrageous provisions to their agreements." (Doc. 18 at 3-4). However, Plaintiff overlooks an important distinction – the contract involved in the instant case is not one for cellular telephone service or obtaining a credit card – it is a business franchise agreement. The general public does not, as a matter of course, sign franchise agreements. Unlike entering into an agreement for cellular telephone service, a franchise agreement is a significant business venture, and with it comes significant financial risk and responsibility.

Next, Plaintiff argues that the parties had unequal bargaining power. However, this disparity does not amount to procedural unconscionability. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Specifically, Plaintiff admits that he holds a college degree and made the conscious decision not to have an attorney review the Franchise Agreement. *VoiceStream Wireless Corp. v. U.S. Comm'cns, Inc.*, 912 So.

---

[7] *See also Franz v. Shedden*, 974 So.2d 1193, 1197 (Fla. 2d DCA 2008) (noting that plaintiff did not read the agreement before signing it and did not seek to ask anyone any questions about the agreement, and concluding that plaintiff failed to establish that he did not have a meaningful opportunity to review the agreement and accept or reject its terms before he signed it); *Lopez v. Ernie Haire Ford, Inc.*, 974 So.2d 517, 519 (Fla. 2d DCA 2008) ("Although [Lopez] chose not to read some portions of the lease, he cannot defeat enforcement of a written contract on the ground that he signed it without reading it.").

2d 34 (Fla. 4th DCA 2004) (finding no procedural unconscionability where dealers "were given ample opportunity to read the contract and seek advice of counsel.").

In his complaint, Plaintiff makes a claim for fraud based on his dealings with a neighbor, who was an area sales developer for Tropical Smoothie and suggested that Plaintiff open a franchise. (Doc. 8, Ex. 1 at ¶ 5). Among other things, Plaintiff claims that his neighbor, Mr. Hackanson, provided him with false sales projections. (*Id.* at ¶ 7). Mr. Hackanson allegedly told Plaintiff that he would help him since Plaintiff did not have any business experience.[8] (*Id.*) Plaintiff maintains that Mr. Hackanson told him that he had signed the Franchise Agreement without changes and that it was not possible to make any changes. (*Id.* at ¶ 9). Plaintiff later learned that Mr. Hackanson was paid a significant part of his initial $15,000 franchise fee, and a share of his ongoing monthly royalty payments. (*Id.* at ¶ 8). Plaintiff maintains that "[t]he import of the [contract] language was minimized by deceptive sales practices, namely the assurances of the 'friendly' neighbor and sales representative, who in fact had an undisclosed financial interest in having Plaintiff sign." (Doc. 8 at 7).

While this Court is sympathetic to Plaintiff's situation, "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir.

---

[8]  Plaintiff maintains that before buying the Tropical Smoothie franchise he had never run a business. (Doc. 8, Ex. 1 at ¶ 4).

2002).  In order to void an arbitration clause, the complaint must contain a "well-founded claim of fraud in the inducement of *the arbitration clause itself*, standing apart from the whole agreement, that would provide grounds for the revocation of the agreement to arbitrate."  *Arnold v. Arnold Corp.-Printed Commc'ns for Bus.*, 920 F.2d 1269, 1278 (6th Cir. 1990) (emphasis added).  The Complaint does not make such allegations.  Accordingly, the arbitration agreement is not procedurally unconscionable.

### 2.  *Substantive Unconscionability*

"Substantive unconscionability . . . requires an assessment of whether the contract terms are 'so outrageously unfair' as to 'shock the judicial conscience.'"  *Bland v. Healthcare & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2nd DCA 2006).

Plaintiff argues that the arbitration procedure "contains draconian requirements as to place and manner of the proceedings."[9]  (Doc. 8 at 9).  Plaintiff also maintains that he "does not have the funds to pay for the entire cost of arbitration in advance and will be forced to dismiss his action if this provision is enforced."  (*Id.*)[10]

---

[9]  Claims must be submitted to binding arbitration: (1) before the American Arbitration Association; (2) in Atlanta, Georgia; (3) class actions and multiple plaintiff claims are prohibited; (4) there must be three arbitrators; (5) the arbitrators must be attorneys, accountants or business persons experienced in franchising; (6) the parties filing the arbitration must initially pay all arbitrator fees or costs; (7) punitive damages are excluded; and (8) claims must be brought within one year of the discovery of underlying facts.  (*See* Franchise Agreement 25D).

[10]  Plaintiff relies primarily on the Ninth Circuit's holding in *Nagrampa v. Mailcoups*, 469 F.3d 1257 (9th Cir. 2006), to support this claim.  (Doc. 8 at 7).  *Nagrampa* applies California law, not Florida law.  Moreover, based on this Court's reading of the 56 page opinion, it is unable to pinpoint any inferrence supporting Plaintiff's asertion that "a reading of *Nagrampa* leaves no doubt that the court would have decided that the arbitration clause was per se unconscionable, if the clause had required *Nagrampa* to pay 100% of the expected costs in advance."  (Doc. 18 at 4-5).

The venue provision of the Franchise Agreement requires that all claims "be submitted to binding arbitration before the American Arbitration Association ("AAA") in Atlanta, Georgia.[11]  Atlanta is not Tropical Smoothie's principal place of business, and this Court does not find such a provision unconscionable, nor does Plaintiff cite any case law to support such an argument.

The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs."  *Green Tree Fin. Corp. v. Randolph*, 513 U.S. 79, 92 (2000).  While there is no bright line for when the costs associated with arbitration will be prohibitive, a party seeking to declare a provision awarding arbitration costs unenforceable must proffer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 607 (3d Cir. 2002).  Plaintiff maintains that he would require advance payment of $20,000-$40,000[12] in order to pursue arbitration and will have to

---

[11]  Additionally, the Court notes that the arbitration provision provides that the claims be mediated before submitting to an arbitration.  It is unclear whether the parties have sought mediation, but the Court strongly recommends that the parties do so in an effort to save costs and resolve this matter.  (Doc. 2, Ex. A at ¶25(D)).  Moreover, in *Anders v. Hometown Mort. Servs, Inc.*, 346 F.3d 1024 (11th Cir. 2003), the Eleventh Circuit noted that the arbitration agreement between the parties provided that arbitration would be in accordance with the American Rules for Commerical Financial Disputes and that those rules specify that "the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."  *Id.* Similarly, the instant Franchise Agreement provides that the arbitration will be conducted pursuant to the same rules.  (*See* Franchise Agreement 25D).  Accordingly, this Court encourages Plaintiff to seek a hardship waiver, or perhaps even obtain a *pro bono* arbitrator, so that he is not precluded from pursuing his claim.

[12]  Defendant does not dispute this figure.

abandon his claim if this provision is enforced.  (Doc. 9, Ex. 1 at ¶ 12).[13]

With respect to the fee provision, Plaintiff objects to Defendants' inclusion of a provision that would require him to pay 100% of the estimated costs in advance as a precondition to even asserting a claim.  While the agreement requires the party filing the arbitration to "initially bear the cost of any arbitrator fees or costs," it nonetheless gives to the arbitrators discretion and authority "to award to the prevailing party all costs of the proceeding, including the arbitrators' costs, out-of-pocket disbursements and reasonable attorneys' fees."  Still, this does not change the fact that Plaintiff is allegedly unable to initially bear these costs, and therefore cannot proceed with his claim.[14]

In *Hall v. Treasure Bay V.I. Corp.*, 371 Fed. Appx. 311, 331 (3rd Cir. 2010), the court held that based on plaintiff's evidence (undisputed arbitration costs and plaintiff's financial status), the possibility of having to pay the entire costs associated with an arbitration would discourage plaintiff from filing a meritorious claim.  The "prospect that [plaintiff] may have to pay the entire amount of an arbitrator's fees and expenses may

---

[13]  Plaintiff submitted an affidavit which set forth his financial status.  Plaintiff maintains that his condominum was foreclosed and he was forced to move out.  Additionally, one of his lenders recently obtained a judgment against him for approximately $52,000.  (*See* Doc. 14 granting Fifth Third Bank's motion for leave to intervene as a judgment-lien creditor of Plaintiff).  Besides the loss of his $110,000 condominim and the judgment, Plaintiff has additional debts to credit card companies, his landlord, and others totaling about $80,000, has no savings, and is struggling to support himself.  (Doc. 8, Ex. 1 at ¶ 11).  Plaintiff is currently unemployed.  and contends that he is considering filing for bankruptcy.  (*Id.*)

[14]  Although the burden is on Plaintiff, it is important to note that Defendant fails to cite and this Court was unable to locate, any Florida courts that have specifically addressed whether it is unconscionable for a plaintiff to pay 100% of the arbitration costs up front (requiring a significant advance), given plaintiff's financial insolvency.

serve to chill her willingness to bring a claim." *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d at 284 ("an arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable"). Accordingly, the Court in *Hall* found the arbitration agreement to be substantively unconscionable.[15]

Based on this Court's analysis of the facts in the instant case in relation to the caselaw from other Circuits (given the dearth of applicable Florida law), Plaintiff has clearly evidenced substantive unconscionability. However, Florida law[16] is clear that in order to void an agreement to arbitrate based on unconscionability, a Court must find that the agreement is *both* procedurally and substantively unconscionable. Therefore, Plaintiff fails to meet his burden.

---

[15] *See also Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) ("appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."). A court must evaluate the likely cost of arbitration not in absolute terms, but relative to the likely costs of litigation. The up-front expense of litigation is often minimal, because many plaintiffs can secure a contingency fee agreement where counsel advances discovery costs and defers collections of fees until judgment. Conversely, a plaintiff forced to arbitrate will incur substantially more costs. *Morrison v. Circuit City Stores*, 317 F.3d 646, 664 (6th Cir. 2003).

[16] Moreover, Florida courts are without authority to ignore the parties' agreement to arbitrate merely because of a party's financial circumstances. *North American Van Lines v. Collyer*, 616 So. 2d 177 (Fla. 5th DCA 1993). Given a clear and unambiguous agreement to arbitrate, it is simply against general contract principles to permit a party to avoid this aspect of their contractual bargain. *Id.* A court is not empowered to rewrite a clear and unambiguous provision, nor should it attempt to make an otherwise valid contract more reasonable for one of the parties. *Id.* Additionally, unexpected difficulty or expense will not excuse a party to a contract from performance. *Id.*

### C.     Claims against Jenrich

Plaintiff seeks to hold Mr. Jenrich liable on a theory of piercing the corporate veil. Counts I and II of the Complaint relate to the Franchise Agreement, and in Count III, Plaintiff seeks to hold Mr. Jenrich liable for his alleged damages sustained in Counts I and II.  (*See* Doc. 2).  Accordingly, Plaintiff's only count against Mr. Jenrich is also related to the Franchise Agreement, and, but for the Franchise Agreement, Plaintiff would not have claims against Mr. Jenrich.

Defendants maintain that even though Mr. Jenrich is not a signatory to the Franchise Agreement,[17] Plaintiff's claims against him should be referred to arbitration under the theory of estoppel.  Under the principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where review of "the relationship among the parties, the contracts they signed . . . and the issues that had arisen" among them discloses that "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001).

---

[17]  The fact that Mr. Jenrich, a non-party to the arbitration agreement, is named as co-defendant does not affect the arbitrability of Plaintiff's claims against Tropical Smoothie.  An arbitration agreement must be enforced "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20; *see also E.E.O.C. v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 460 (6th Cir. 1999).  Indeed, a plaintiff cannot avoid the arbitration for which it contracted simply by adding a non-signatory defendant.  *See Lawson Fabrics, Inc. v. Akzona, Inc.,* 355 F.Supp. 1146, 1151 (S.D.N.Y. 1973) (quoting *Hilti, Inc. v. Oldach,* 392 F.2d 368, 369 n. 2 (1st Cir. 1968)).

Plaintiff argues that the claim against Mr. Jenrich should be stayed and not submitted to arbitration. However, Plaintiff cites no authority for this position. Mr. Jenrich has standing to enforce the arbitration provision, and the arbitrator will likewise have jurisdiction over Plaintiff's claims against Mr. Jenrich. *Orcutt v. Kettering Radiologists, Inc.*, 199 F.Supp.2d 746 (S.D. Ohio 2002). Therefore, Plaintiff's claims against Mr. Jenrich should proceed to arbitration.

### D.    Motion for Partial Summary Judgment

Plaintiff maintains that he would not oppose referring this matter to arbitration if the Court were to first rule on one issue of interpretation with respect to the Franchise Agreement.[18] (Doc. 8 at 2). However, in ruling on a motion brought under Section 3 of the FAA, the Court's role is limited in determining whether the agreement to arbitrate is enforceable. 9 U.S.C. § 4; *Green Tree Fin. Corp.*, 539 U.S. 444. Interpreting the agreement to arbitrate concerning its required arbitration procedures is within the authority of the arbitrator. *Id.* at 451-52. Therefore, it would be improper for this Court to enter a decision on the motion for partial summary judgment. (*See* Doc. 10).

### III.    CONCLUSION

Accordingly, based on the foregoing, Defendants' motion to dismiss (Doc. 5) is **GRANTED** and further proceedings in this matter are hereby **STAYED** and this case is **CLOSED**. Within 30 days of the final arbitration decision, either the Plaintiff shall move

---

[18] The issue proffered for interpretation is the sentence in Paragraph 25D of the Franchise Agreement: "The parties filing the arbitration shall initially bear the cost of any arbirtator fees or costs."

the Court to reopen the case or the parties shall file a stipulated notice of dismissal

pursuant to Fed. R. Civ. P. 41(a)(1)(ii).

**IT IS SO ORDERED.**

Date: _1/3/2012_ _____

_Timothy S. Black_
Timothy S. Black
United States District Judge